## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **PETERSEN COMPANIES, LLC[1],** | * |
| **as Authorized Representative of:** | |
| | * |
| **MARY GRASSESCHI,** | |
| **JOHN NELSON, MARTHA LOFTUS,** | * |
| **GLORIA NEAL, DAVID ANDERSON,** | |
| **ROSEMARY BRINKLEY, ALBERTA COOK,** | *    **Honorable Judge BUCKLO** |
| **DONNABELLE FRAZIER, LADONNA GANN,** | |
| **RICHARD HESS, JACK ICENOGLE,** | * |
| **CHRISTINA ISHMAEL, DAVID KATNER,** | |
| **WILMER KAUFMAN, LILLIAN KOEHLER,** | * |
| **VIRGINIA LANE, CAROL MARCOUX,** | |
| **RANDY MCGREW, TIFFANY MERCIER,** | *    **Case No.: 16-cv-09922** |
| **CATHERINE MERRY-AZIMI,** | |
| **CATHERINE MONDY, LENA MORGAN,** | * |
| **NORMAN MULLINS, DOROTHY ROSE,** | |
| **EDWARD SMITH, MARY STEFFAN,** | * |
| **WENDY TOUFEXIS, MITCHELL VANWINKLE,** | |
| **ANGELA WINTERS, SHARON WRONE,** | * |
| **ROBERT BIGGINS, EDWARD ELLIOTT,** | |
| **GRACIE FATHAUER, DAVID SIMPSON,** | * |
| **WILLIAM SUCKACH, ANNIE TURNER,** | |
| | * |
| **PLAINTIFFS,** | |
| | * |
| PLAINTIFFS ARE CLASS REPRESENTATIVES | |
| OF THE PLAINTIFFS' CLASS THEY SEEK TO | * |
| REPRESENT, | |
| **v.** | * |
| | |
| **FELICIA F. NORWOOD, in her official** | * |
| **capacity as the Director of the** | |
| **Illinois Department of Healthcare** | * |
| **and Family Services,** | |
| | * |
| **DEFENDANT.** | |
| | * |

---

[1] Federal law requires state agencies to permit applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications with the state agency responsible for issuing determinations on Medicaid eligibility. *See* 42 C.F.R. § 435.923.

## THIRD AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

## I.     PRELIMINARY STATEMENT

As a condition of receiving federal funds, the State of Illinois is required to operate the Medicaid program in compliance with the Social Security Act and implementing regulations, pursuant to 42 U.S.C. § 1396(c).  This case concerns the failure of Defendant, Felicia F. Norwood ("Defendant" and/or "Norwood"), the Director of the Illinois Department of Healthcare and Family Services ("Defendant" and/or "HFS") to comply with her obligation to afford Medicaid benefits to residents in long-term care facilities in compliance with the federal rules and regulations of the United States.  The Defendant is directly responsible for policies necessary for the implementation of a system for determination of providing Medicaid benefits that complies, in all aspects, with federal law.  The failures by the Defendant to grant and provide for Medicaid benefits to residents of skilled nursing facilities who are eligible for Medicaid benefits constitute violations of the Federal Medicaid Act and implementing regulations at 42 USC § 1396u-2, 42 C.F.R. § 438.10, and 42 .U..SC § 1396(a), § 1902(a)(37)(a).

## II.     JURISDICTION AND VENUE

This action arises under the Federal Medicaid Act and implementing regulations at 42 U.S.C. § 1396u-2, 42 C.F.R. § 438.10, and 42 U.S.C. § 1396(a), § 1902(a)(37)(a) and Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 12131 *et seq.*  Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§1331, 1343(k) and 28 U.S.C. §§2201 and 2202.  Additionally, the jurisdiction of this court is invoked to secure protection to redress the deprivation under color of state law, statute, custom and/or usage of a right, privilege and/or immunity secured to the Plaintiffs by the Fourteenth

Amendment to the Constitution of the United States, the Equal Protection Clause, 42 U.S.C.
§1983. Venue lies in this forum pursuant to 28 U.S.C. § 1391(e).

### III.     PARTIES

1. Petersen Companies, LLC ("Petersen") is headquartered in Peoria, Illinois.  Peterson owns and
   operates twenty-four hour skilled nursing home facilities located in the State of Illinois.

2. Certain individual residents who receive nursing facility services and medical care at Petersen
   healthcare facilities, who submitted Medicaid applications for which a decision to grant or deny
   benefits was excessively delayed and in fact is still pending with the Illinois Department of
   Healthcare and Family Services:

   a. Martha Loftus was admitted to a Petersen skilled nursing facility on or about
      December 28, 2016 ("Loftus" or "Plaintiff").  Loftus submitted her
      application for long-term care Medicaid benefits on or about December 28,
      2016, and is pending approval and/or decision by HFS.  Loftus suffers from
      paranoid schizophrenia among other severe medical conditions.  She
      requires twenty-four hour skilled nursing care at a Petersen facility.  Loftus
      has a significant outstanding balance owed to a Petersen facility as a result
      of long-term care and nursing facility services.

   b. Gloria Neal was admitted to a Petersen skilled nursing facility on or about
      June 24, 2016 ("Neal" or "Plaintiff").  Neal submitted her application for
      long-term care Medicaid benefits on or about June 24, 2016, and is pending
      approval and/or decision by HFS.  Neal suffers from psychogenic paranoid
      psychosis among other severe medical conditions.  She requires twenty-four
      hour skilled nursing care at a Petersen facility. Neal has a significant

outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

3. Certain individual residents at Petersen healthcare facilities, who submitted Medicaid applications were approved to receive Medicaid benefits and for whom the Illinois Department of Healthcare and Family Services excessively delayed payment of healthcare and services rendered by Petersen healthcare facilities:

   a. Mary Grasseschi was admitted to a Petersen skilled nursing facility on or about December 26, 2014 ("Grasseschi" or "Plaintiff"). Grasseschi applied for long-term care Medicaid benefits on or about June 30, 2015 and was approved to receive long-term care Medicaid benefits. Grasseschi suffers from severe medical conditions. She requires twenty-four hour skilled nursing care at a Petersen facility. Grasseschi has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

   b. John Nelson was admitted to a Petersen skilled nursing facility on or about March 17, 2014 ("Nelson, J." or "Plaintiff"). Nelson, J. applied for long-term care Medicaid benefits on or about May 25, 2016 and was approved to receive long-term care Medicaid benefits with an effective date of February 1, 2016. Nelson, J. suffers from severe medical condition as well having mild intellectual disabilities. Nelson, J. has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

4

c.   Rosemary Brinkley was admitted to a Petersen skilled nursing facility on or about April 10, 2015 ("Brinkley" or "Plaintiff").  Brinkley submitted her application for long-term care Medicaid benefits on or about April 13, 2015, and is pending approval and/or decision by HFS.  Brinkley suffers from schizophrenia, among other severe medical conditions. She requires twenty-four-hour skilled nursing care at a Petersen facility. Brinkley has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

d.   Alberta Cook was admitted to a Petersen skilled nursing facility on February 15, 2016 ("Cook" or "Plaintiff").  Cook submitted her application for long-term care Medicaid benefits on or about March 23, 2016, and is pending approval and/or decision by HFS.  Cook suffers from dementia and osteoarthritis, among other severe medical conditions. She requires twenty-four-hour skilled nursing care at a Petersen facility. Cook has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

e.   Donna belle Frazier was admitted to a Petersen skilled nursing facility on or about December 3, 2012 ("Frazier" or "Plaintiff").  Frazier submitted her application for long-term care Medicaid benefits on or about February 2, 2013, and is pending approval and/or decision by HFS. Frazier suffers from dementia and macular degeneration, amongst other severe medical conditions. She requires twenty-four-hour skilled nursing care at a Petersen

facility. Frazier has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

f. Wilmer Kaufman, deceased, was admitted to a Petersen skilled nursing facility on or about October 27, 2014 ("Kaufman" or "Plaintiff"). Kaufman submitted his application for long-term care Medicaid benefits on or about October 28, 2014, and is pending approval and/or decision by HFS. Kaufman suffered from kidney failure and muscle weakness, amongst other severe medical conditions. He required twenty-four-hour skilled nursing care at a Petersen facility. Kaufman has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

g. Lillian Koehler was admitted to a Petersen skilled nursing facility on or about December 11, 2014 ("Koehler" or "Plaintiff"). Koehler submitted her application for long-term care Medicaid benefits on or about December 11, 2014, and is pending approval and/or decision by HFS. Koehler suffers from severe medical conditions. She requires twenty-four-hour skilled nursing care at a Petersen facility. Koehler has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

h. Carol Marcoux was admitted to a Petersen skilled nursing facility on or about March 3, 2015 ("Marcoux" or "Plaintiff"). Marcoux submitted her application for long-term care Medicaid benefits on or about March 14, 2015, and is pending approval and/or decision by HFS. Marcoux suffers

from muscle weakness, amongst other severe medical conditions. She requires twenty-four-hour skilled nursing care at a Petersen facility. Marcoux has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

i. Tiffany Mercier was admitted to a Petersen skilled nursing facility on or about March 31, 2014 ("Mercier" or "Plaintiff"). Mercier submitted her application for long-term care Medicaid benefits on or about June 21, 2016, and is pending approval and/or decision by HFS. Mercier suffers from hypertension and is bipolar, amongst other severe medical conditions. She requires twenty-four-hour skilled nursing care at a Petersen facility. Mercier has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

j. Catherine Mondy was admitted to a Petersen skilled nursing facility on or about April 16, 2015 ("Mondy" or "Plaintiff"). Mondy submitted her application for long-term care Medicaid benefits on or about April 20, 2015, and is pending approval and/or decision by HFS. Mondy suffers from Alzheimer's disease, amongst other severe medical conditions. She requires twenty-four-hour skilled nursing care at a Petersen facility. Mondy has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

k. Mitchell Vanwinkle was admitted to a Petersen skilled nursing facility on or about September 9, 2014 ("Vanwinkle" or "Plaintiff"). Vanwinkle submitted his application for long-term care Medicaid benefits on or about

7

October 6, 2015, and is pending approval and/or decision by HFS. Vanwinkle suffers from severe medical conditions. He requires twenty-four-hour skilled nursing care at a Petersen facility. Vanwinkle has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

l.  Robert Biggins, deceased, was admitted to a Petersen skilled nursing facility on or about July 25, 2014 ("Biggins" or "Plaintiff"). Biggins submitted his application for long-term care Medicaid benefits on or about February 4, 2016, and is pending approval and/or decision by HFS. Biggins suffered from severe medical conditions. He required twenty-four-hour skilled nursing care at a Petersen facility. Biggins has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

m.  William Suckach was admitted to a Petersen skilled nursing facility on or about June 12, 2015. ("Suckach" or "Plaintiff"). Suckach submitted his application for long-term care Medicaid benefits on or about June 17, 2015, and is pending approval and/or decision by HFS. Suckach suffers from severe medical conditions. He requires twenty-four-hour skilled nursing care at a Petersen facility. Suckach has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

n.  David Anderson was admitted to a Petersen skilled nursing facility on or about July 8, 2014 ("Anderson" or "Plaintiff"). Anderson was approved to

receive long-term care Medicaid benefits beginning or about February 1, 2015. Anderson suffers from major depressive disorder and type 2 diabetes, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Petersen facility. Anderson has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

o. Edward Elliott, deceased, was admitted to a Petersen skilled nursing facility on or about September 17, 2012 ("Elliott" or "Plaintiff"). Elliott was approved to receive long-term care Medicaid benefits with benefits to begin from October 1, 2012. Elliott suffers from severe medical conditions. He required twenty-four-hour skilled nursing care at a Petersen facility. Elliott has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

p. Ladonna Gann was admitted to a Petersen skilled nursing facility on or about June 11, 2015 ("Gann" or "Plaintiff"). Gann applied for long-term care Medicaid benefits on or about July 8, 2015 and was approved to receive long-term care Medicaid benefits. Gann suffers from severe medical conditions. She requires twenty-four hour skilled nursing care at a Petersen facility. Gann has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

q. Richard Hess was admitted to a Petersen skilled nursing facility on or about April 7, 2015 ("Hess" or "Plaintiff"). Hess applied for long-term care Medicaid benefits on or about March 11, 2015 and was approved to receive

long-term care Medicaid benefits. Hess suffers from dementia and other severe medical conditions. He requires twenty-four hour skilled nursing care at a Petersen facility. Hess has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

r.   Jack Icenogle was admitted to a Petersen skilled nursing facility on or about April 30, 2014 ("Icenogle" or "Plaintiff"). Icenogle applied for long-term care Medicaid benefits on or about August 28, 2015 and was approved to receive long-term care Medicaid benefits. Icenogle suffers from dementia and hypertension, amongst other severe medical conditions. He requires twenty-four hour skilled nursing care at a Petersen facility. Icenogle has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

s.   Christina Ishmael was admitted to a Petersen skilled nursing facility on or about November 25, 2014 ("Ishmael" or "Plaintiff"). Ishmael applied for long-term care Medicaid benefits on or about April 1, 2016 and was approved to receive long-term care Medicaid benefits. Ishmael suffers from delirium, amongst other severe medical conditions. She requires twenty-four hour skilled nursing care at a Petersen facility. Ishmael has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

t.   David Katner was admitted to a Petersen skilled nursing facility on or about December 24, 2014 ("Katner" or "Plaintiff"). Katner applied for long-term

care Medicaid benefits on or about January 15, 2015 and was approved to receive long-term care Medicaid benefits. Katner suffers from congestive heart failure, amongst other severe medical conditions. He requires twenty-four hour skilled nursing care at a Petersen facility. Katner has a significant outstanding balance owed to a Petersen facility because of long-term care and nursing facility services.

u.  Virginia Lane was admitted to a Petersen skilled nursing facility on or about August 13, 2012 ("Katner" or "Plaintiff"). Lane applied for long-term care Medicaid benefits on or about March 31, 2014 and was approved to receive long-term care Medicaid benefits. Lane suffers from acute kidney failure, amongst other severe medical conditions. She requires twenty-four hour skilled nursing care at a Petersen facility. Lane has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

v.  Randy McGrew was admitted to a Petersen skilled nursing facility on or about May 11, 2015 ("McGrew" or "Plaintiff"). McGrew submitted an application for long-term care Medicaid benefits on or about May 12, 2015 and was approved to receive long-term care Medicaid benefits. McGrew suffers from gastrostomy, amongst other severe medical conditions. He requires twenty-four hour skilled nursing care at a Petersen facility. McGrew has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

w. Catherine Merry-Azimi was admitted to a Petersen skilled nursing facility on or about December 20, 2013 ("Merry-Azimi" or "Plaintiff"). Merry-Azimi applied for long-term care Medicaid benefits on or about May 12, 2015 and was approved to receive long-term care Medicaid benefits. Merry-Azimi suffers from severe medical conditions. She requires twenty-four hour skilled nursing care at a Petersen facility. Merry-Azimi has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

x. Lena Morgan was admitted to a Petersen skilled nursing facility on or about December 26, 2011 ("Morgan" or "Plaintiff"). Morgan applied for long-term care Medicaid benefits on or about March 8, 2014 and was approved to receive long-term care Medicaid benefits. Morgan suffers from chronic ischemic heart disease, cognitive impairment, amongst other severe medical conditions. She requires twenty-four hour skilled nursing care at a Petersen facility. Morgan has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

y. Dorothy Rose, deceased, was admitted to a Petersen skilled nursing facility on or about August 10, 2013 ("Rose" or "Plaintiff"). Rose applied for long-term care Medicaid benefits on or about December 22, 2014 and was approved to receive long-term care Medicaid benefits. Rose suffered from severe medical conditions. She required twenty-four-hour skilled nursing care at a Petersen facility. Rose has a significant outstanding balance owed

to a Petersen facility as a result of long-term care and nursing facility services.

z. Edward Smith was admitted to a Petersen skilled nursing facility on or about February 16, 2012 ("Smith" or "Plaintiff"). Smith applied for long-term care Medicaid benefits on or about February 1, 2015 and was approved to receive long-term care Medicaid benefits in or around November, 2015. Smith suffers from schizoaffective disorder, amongst other severe medical conditions. He requires twenty-four hour skilled nursing care at a Petersen facility. Smith has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

aa. Mary Steffan was admitted to a Petersen skilled nursing facility on or about June 24, 2014 ("Steffan" or "Plaintiff"). Steffan applied for long-term care Medicaid benefits and was approved to receive long-term care Medicaid benefits. Steffan suffers from chronic obstructive pulmonary disease, amongst other severe medical conditions. She requires twenty-four hour skilled nursing care at a Petersen facility. Steffan has a significant outstanding balance owed to a Petersen facility because of long-term care and nursing facility services.

bb. Wendy Toufexis was admitted to a Petersen skilled nursing facility on or about October 26, 2010 ("Toufexis" or "Plaintiff"). Toufexis applied for long-term care Medicaid benefits on or about April 14, 2015 and was approved to receive long-term care Medicaid benefits to begin from January 1, 2015. Toufexis suffers from multiple severe medical conditions. She

requires twenty-four hour skilled nursing care at a Petersen facility. Toufexis has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

cc. Angela Winters was admitted to a Petersen skilled nursing facility on or about April 1, 2011 ("Winters" or "Plaintiff"). Winters applied for long-term care Medicaid benefits on or about May 12, 2015 and was approved to receive long-term care Medicaid benefits. Winters suffers from cognitive impairment, amongst other severe medical conditions. She requires twenty-four hour skilled nursing care at a Petersen facility. Winters has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

dd. Sharon Wrone, deceased, was admitted to a Petersen skilled nursing facility on or about November 20, 2015 ("Wrone" or "Plaintiff"). Wrone applied for long-term care Medicaid benefits on or about February 5, 2015 and was approved to receive long-term care Medicaid benefits. Wrone suffered from type 2 diabetes and hypertension, amongst other severe medical conditions. She required twenty-four-hour skilled nursing care at a Petersen facility. Wrone has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

ee. Gracie Fathauer was admitted to a Petersen skilled nursing facility on or about September 25, 2014 ("Fathauer" or "Plaintiff"). Fathauer applied for long-term care Medicaid benefits on or about November 5, 2014 and was approved to receive long-term care Medicaid benefits. Fathauer suffers

severe medical conditions. She requires twenty-four hour skilled nursing care at a Petersen facility. Fathauer has a significant outstanding balance owed to a Petersen facility because of long-term care and nursing facility services.

ff. David Simpson was admitted to a Petersen skilled nursing facility on or about May 13, 2009 ("Simpson" or "Plaintiff"). Simpson applied for long-term care Medicaid benefits on or about April 14, 2015 and was approved to receive long-term care Medicaid benefits. Simpson suffers from acute kidney failure, amongst other severe medical conditions. He requires twenty-four hour skilled nursing care at a Petersen facility. Simpson has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

gg. Annie Turner was admitted to a Petersen skilled nursing facility on or about November 20, 2015 ("Turner" or "Plaintiff"). Turner applied for long-term care Medicaid benefits on or about February 5, 2015 and was approved to receive long-term care Medicaid benefits. Turner suffers from Alzheimer's disease, amongst other severe medical conditions. She requires twenty-four hour skilled nursing care at a Petersen facility. Turner has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

hh. Norman Mullins, deceased, was admitted to a Petersen skilled nursing facility on or about January 29, 2015 ("Mullins" or "Plaintiff"). Mullins submitted his application for long-term care Medicaid benefits on or about

March 3, 2014, and is pending approval and/or decision by HFS. Mullins suffered from severe medical conditions. He required twenty-four-hour skilled nursing care at a Petersen facility. Mullins has a significant outstanding balance owed to a Petersen facility as a result of long-term care and nursing facility services.

4. The Illinois Department of Healthcare and Family Services ("HFS" or "Defendant") is an Illinois state agency that provides Medicaid services to enrollees in Illinois. HFS is the sole state agency administering Medicaid in the State of Illinois.

5. The Felicia F. Norwood, is the Director of HFS ("Norwood" or "Defendant"), and at all times material to this Complaint acted under color of state law in administering the regulations, customs, policies, and practices material herein. She is sued in her official capacity only.

## IV. CLASS ALLEGATIONS

### A. COMMON QUESTIONS OF LAW AND FACT.

The named Plaintiffs are members of the classes they seek to represent. The classes consist of residents residing at facilities owned and operated by Petersen, who were provided twenty-four hour skilled nursing care and supportive living services. All Plaintiffs were insolvent and entitled to receive Medicaid benefits pursuant to federal and state law and are "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq.* and the Rehabilitation Act, 28 C.F.R. § 35.130 *et. seq.* The Defendant violated Plaintiffs' rights by: (1) not approving long-term care Medicaid benefits for eligible and qualified residents of Petersen health care facilities; (2) not providing for nursing facility services for eligible and approved qualified residents residing at facilities owned and operated by Petersen. These actions by Defendant violate the Federal Medicaid Act, 42 U.S.C. §1396a(a)(8), and implementing regulations.

16

The Plaintiffs seek an Order from the Court providing injunctive relief by a) issuing an Order requiring the Defendant to automatically approve the Plaintiffs' long-term care Medicaid benefits; and,  b)  issuing an Order from the Court requiring the Defendant to provide for nursing facility services for all approved Medicaid claims submitted within twelve-months as required by the federal regulations.

### B.     TYPICALITY OF CLAIMS AND RELIEF SOUGHT

The claims of the named Plaintiffs and the relief necessary to remedy the claims of the named Plaintiffs are the same as the claims of the putative class members and the relief necessary to remedy the claims of the putative class members.  The Plaintiffs seek an Order from the Court providing injunctive relief by a) issuing an Order requiring the Defendant to automatically approve the Plaintiffs' Medicaid benefits; and, b) issuing an Order from the Court requiring the Defendant to provide for nursing facility services for all approved Medicaid claims submitted within one year as required by the federal regulations.

### C.     NUMEROSITY AND IMPRACTICABILITY OF JOINDER

The classes which Plaintiffs seek to represent are too numerous to make joinder practicable.

### D.     ADEQUACY OF REPRESENTATION

The class' representatives' interests are coextensive with those of the putative classes in that each seeks to remedy Defendant's violations herein stated.  The class representatives are able and willing to represent the putative classes fairly and vigorously as they pursue their common claims through this action.  Plaintiffs' counsel are also qualified, experienced, and able to conduct the litigation and to meet the time and fiscal demands required to litigate a class action of this size and complexity.  The combined interest, experience and resources of the named Plaintiffs and

their counsel to litigate competently the individual and class' claims satisfy the adequacy of representation requirement.

### E.    EFFICIENCY OF CLASS PROSECUTION OF COMMON CLAIMS

Certification of classes of similarly situated Medicaid applicants, who were adversely treated as stated above under the Act is the most efficient and economical means of resolving the questions of law and fact that are common to the individual claims of the named Plaintiffs and the putative classes.  The individual claims of the named Plaintiffs and those of the putative classes require resolution of the common question of whether the Defendant has engaged in adverse treatment of Medicaid applicants.  The named Plaintiffs seek for themselves and the putative classes remedies to eliminate the Defendant's violations.  The named Plaintiffs have standing to seek such relief. Without class certification, the same evidence and issues would be subject to repeated re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the classes of individuals as defined by the Class Definition herein are affected by these common questions of law and fact is the most efficient and judicial means of presenting the evidence and arguments necessary to resolve such questions for the named plaintiffs, the putative classes, and the Defendant.

### F.    REQUIREMENTS OF RULE 23(b)(2)

The Defendant has acted on grounds generally applicable to the classes by violating the rights of the Plaintiffs as stated herein.  The Defendant's actions have violated federal and state laws.  Therefore, the Defendant's adverse actions have made temporary and permanent injunctive relief and corresponding declaratory relief appropriate with respect to the named Plaintiffs and putative classes as a whole. Injunctive and declaratory relief is the predominate relief sought. Declaratory and injunctive relief flow directly and automatically from proof of the common

questions of law and fact regarding the existence of the denial of benefits and the failure to comply

with Federal regulations.  Such relief is the factual and legal predicate for the named Plaintiffs'

and class members' entitlement to monetary and non-monetary remedies for losses caused by such

treatment.  The Plaintiffs and the similarly situated individuals are similar because their rights are

the same, their classifications are the same, and their harm is the same.  The Plaintiffs and the

similarly situated individuals meet the collective action requirements of commonality, typicality

and numerosity.

### G.    CLASS' DEFINITIONS

The classes consist of:

All disabled and/or medically needy persons who require long term care at a skilled nursing facility and are residing at a skilled nursing facility owned and operated by Petersen Companies, LLC, who are eligible for Medicaid and who submitted Medicaid applications and either 1) have not received a determination on their application by Defendant within forty-five days of submitting their application for non-disabled applicants and ninety days for disabled applicants, or 2) who were approved for Medicaid benefits, and who have not received payment for their nursing care within twelve months of having notice of claims for payment.  Defendant will be deemed to have notice either on 1) the date a claim is received or 2) for claims for services predating December 1, 2016, the date of services, so long as the patient  plaintiff at issue had an application for long-term care services approved or pending for more than ninety days at the time of those services that would have put the agency on notice of the claim.

## V. STATEMENT OF FACTS

1.    The named Plaintiffs are members of the classes they seek to represent.  The classes

consists of long term care residents residing at facilities owned and operated by Petersen, who

were provided twenty-four hour skilled nursing care and supportive living services, and who

were insolvent and entitled to receive Medicaid benefits pursuant to federal and state law and are

"qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 et. seq.

and 28 C.F.R. § 35.130 *et. seq.*

2.      The Illinois State Medicaid Plan operates under the statutory authority of Title XIX of the Social Security Act Medical Assistance Program.

3.      As a condition of receiving federal funds, HFS is required to administer the Medicaid program in the state of Illinois in compliance with the Federal Medicaid Act, 42 U.S.C. § 1396a(a)(8), and implementing regulations.

4.      Federal law requires that the Defendant make an eligibility determination on a Medicaid application within forty-five days.  *See* 42 C.F.R . §435.912.

5.      Federal law requires the Defendant to issue a determination on an individual's Medicaid application, and requires that every applicant be timely afforded such notice and a right to appeal such decision.

6.      Pursuant to 42 CFR §431.220, applicant has a right to file an appeal ("Inaction Appeal") when the state Medicaid agency [Defendant] has failed to timely process an individual's Medicaid application or request and obtain interim benefits for automatic approval.

**42 CFR §431.220   When a hearing is required.**

(a) The State agency must grant an opportunity for a hearing to the following:
(1) Any applicant who requests it because his claim for services is denied or is not acted upon with reasonable promptness.
(2) Any beneficiary who requests it because he or she believes the agency has taken an action erroneously.
(3) Any resident who requests it because he or she believes a skilled nursing facility or nursing facility has erroneously determined that he or she must be transferred or discharged.
(4) Any individual who requests it because he or she believes the State has made an erroneous determination with regard to the preadmission and annual resident review requirements of section 1919(e)(7) of the Act.
(5) Any MCO, PIHP, or PAHP enrollee who is entitled to a hearing under subpart F of part 438 of this chapter.
(6) Any enrollee in a non-emergency medical transportation PAHP (as that term is defined in §438.9 of this chapter) who has an action as stated in this subpart.
(7) Any enrollee who is entitled to a hearing under subpart B of part 438 of this chapter.

20

7.    In *Doe 1-13 by and Through Doe Sr. 1-13 v. Chiles,* 136 F.3d 709 (1998) the court found that an action brought by disabled individuals will prevail when the action is brought against state officials, who failed to provide Medicaid services with reasonable promptness. Additionally, the *Doe* court found that failing to furnish Medicaid assistance with reasonable promptness to disabled individuals should not exceed 90 days. The action was brought pursuant to 42 U.S.C. § 1983 against officials, alleging unreasonable delays in providing certain services under the state Medicare program.  Additionally, in *Brown v. Luna*, 735 F.Supp. 762 (M.D. Tenn., 1990) the Court held that "[a]ll applications pending more than 90 days without an eligibility decision [were to] be awarded interim Medicaid benefits unless [the Agency had] documented that the application has been delayed for good cause."

8.    In 2008, Congress passed legislation requiring all states to implement electronic asset verification programs ("AVP") to obtain information regarding the financial resources of Medicaid applicants, including those seeking Medicaid coverage for long-term care. 42 U.S.C. §1396w. This requirement has been codified in the federal Medicaid regulations. 42 C.F.R. §435.945(j).

9.    Federal law imposes on Medicaid agencies an affirmative duty to obtain information regarding a Medicaid applicant's eligibility.  This duty exists independent of the actions of the Medicaid applicant and is consequently not dependent on the extent of an applicant's efforts to obtain eligibility information, or on an applicant's request for assistance. 42 C.F.R. § 435.952.  Furthermore, Medicaid agencies are not permitted to ask applicants to produce information unless that information is unavailable electronically.  42 C.F.R. § 435.952(c).

10.    The Defendant did not seek to obtain any of the Plaintiffs' information electronically via AVP.  Nor did the Defendant try to obtain Plaintiffs' information from

secondary sources.  Instead, the Defendant placed the burden of providing information entirely on the Plaintiffs.  These actions violate federal law, which requires agencies to obtain and use items of information relating to Medicaid applicants and beneficiaries to "prevent ineligibility and incorrect payments."  42 C.F.R. § 435.953(a).  No steps were taken by the Defendant to prevent the ineligibility of the Plaintiffs.

11.     The Defendant has failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

12.     In light of the Defendant's failure to comply with federal and state Medicaid laws, the Plaintiffs have been unable to pay for their room, board, care and services at Petersen facilities during their period of Medicaid ineligibility in the amounts stated above.

13.     Such inaction by the Defendant places the Plaintiffs at risk of being discharged from Petersen facilities, and jeopardizes their health, safety, and well-being.

14.     As a direct result of the Defendant's failure to timely process their Medicaid applications, Plaintiffs Loftus and Neal have failed to receive nursing facility services provided by Defendant, which they are entitled pursuant to federal law.

15.     The Illinois State Medicaid Plan operates under the statutory authority of Title XIX of the Social Security Act Medical Assistance Program.

16.     As a condition of receiving federal funds, the Defendant is required to administer the Medicaid program in the State of Illinois in compliance with the Federal Medicaid Act, 42 U.S.C. §1396a(a)(8), and implementing regulations.

17.     The Defendant has failed/refused to pay within one year Medicaid claims made

by the Plaintiffs, pursuant to 42 C.F.R. 447.45(d) which states as follows:

> *Timely processing of claims.*
>
> **(1)** The Medicaid agency must require providers to submit all claims no later than 12 months from the date of service
>
> ......
>
> **(4)** The agency must pay all other claims within 12 months of the date of receipt…[exceptions are excluded as are not applicable.]
>
> 42 C.F.R. 447.45(d).

18.     The Defendant has failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to the Plaintiffs' residents, who meet the financial eligibility standards, as required under 42 U.S.C. §1396a(a)(10).

19.     Due to the Defendant's failure to comply with 42 C.F.R. § 447.45(d), Defendant has failed to provide for nursing facility services to Plaintiffs Grasseschi, Nelson, J., Brinkley, Cook, Frazier, Kaufman, Koehler, Marcoux, Mercier, Mondy, Vanwinkle, Biggins, Suckach, Anderson, Elliott, Gann, Hess, Icenogle, Ishmael, Katner, Lane, McGrew, Merry-Azimi, Morgan, Rose, Smith, Steffan, Toufexis, Winters, Wrone, Fathauer, Simpson, Turner, and Mullins' timely filed claims, these Plaintiffs have failed to receive the nursing facility services required by Plaintiffs and to which they are entitled pursuant to federal law.

20.     All the Plaintiffs are "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 705 *et. seq.*, and 28 C.F.R. § 35.130 *et. seq.*

21.     The Defendant's failure to afford the Plaintiffs public benefits and services, to which they are entitled under federal law, and failure to grant the Residents Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the

ADA, 42 U.S.C. § 12132 *et seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 705 *et. seq.*, and 28 C.F.R. § 35.130 e*t seq.*

22.     By failing to pay for services rendered to persons eligible for Medicaid benefits, the Defendant has failed to comply with federal law, as preempted by the Supremacy Clause of the United States Constitution, Article VI. The burden placed on the Defendant, should the Court grant the relief requested in this action, is that Defendant will be required to comply with federal Medicaid laws and provide for nursing facility services  to Plaintiffs. The Defendant stand to suffer diminutive, if any, burden by the timely rendering of payment of Plaintiffs' Medicaid claims to the skilled nursing and supportive living facilities in which they reside.

## VI. CAUSES OF ACTION

## COUNT ONE  - DECLARATORY JUDGMENT RELIEF

23.     Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

24.     Pursuant to 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, Plaintiffs seek a declaration by this Court.

25.     It is well settled that the district court's exercise of discretion in a declaratory judgment action should be informed by a number of prudential factors, including: (1) considerations of practicality and efficient judicial administration; (2) the functions and limitations of the federal judicial power; (3) traditional principles of equity, comity, and federalism; (4) Eleventh Amendment and other constitutional concerns; and (5) the public interest. *Smith & Usaha, supra* note 2, at 116, *citing* . *Wilton v. Seven Falls Company, 515 U.S. 288 (1995); Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Rickover*, 369 U.S. 111 at 112-13; *Public Service Commission of Utah v. Wycoff Company,* 344 U.S. 237, 243-47 (1952). Perhaps the most important factors are whether a declaratory judgment will serve a useful purpose and resolve the controversy

between the parties. *Smith & Usaha, supra not*e 2, at 116 (collecting cases); *Wilton*, 515 U.S. at 288; *Green v. Mansour*, 474 U.S. 64, 74 (1985); *Rickover*, 369 U.S. 111 at 112-13*G*; *Wycoff*, 344 U.S. at 244.

26.     The Illinois State Medicaid Plan operates under the statutory authority of Title XIX of the Social Security Act Medical Assistance Program.

27.     As a condition of receiving federal funds, HFS is required to administer the Medicaid program in the state of Illinois in compliance with the Federal Medicaid Act, 42 U.S.C. § 1396a(a)(8), and implementing regulations.

28.     Federal law requires the Defendant to issue a determination on an individual's Medicaid application, and requires that every applicant be timely afforded such notice and a right to appeal such decision.

29.     Federal law requires that the Defendant make an eligibility determination on a Medicaid application within forty-five days.  *See* 42 C.F.R . §435.912.

30.     Pursuant to 42 C.F.R. §431.220, applicant has a right to file an Inaction Appeal when the state Medicaid agency [Defendant] has failed to timely process an individual's Medicaid application or request and obtain interim benefits for automatic approval.

31.     Federal law requires the Defendant to pay within one year Medicaid claims made by the Plaintiffs, pursuant to 42 C.F.R.  447.45(d).

32.     In *Doe 1-13 by and Through Doe Sr. 1-13 v. Chiles*, 136 F.3d 709 (1998) the court found that an action brought by disabled individuals will prevail when the action is brought against state officials, who failed to provide Medicaid services with reasonable promptness. Additionally, the *Doe* court found that failing to furnish Medicaid assistance with reasonable promptness to disabled individuals should not exceed 90 days. The action was brought pursuant to 42 U.S.C.

§1983 against officials, alleging unreasonable delays in providing certain services under the state Medicare program.

33.    The Defendant has failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

34.    In light of the Defendant's failure to comply with federal and state Medicaid laws, the Plaintiffs have been unable to pay for their room, board, care and services at Petersen facilities during their period of Medicaid ineligibility in the amounts stated above.

35.    Such inaction places the Plaintiffs at risk of being discharged from Petersen facilities, and jeopardizes their health, safety, and well-being.

36.    As a direct result of the Defendant's failure to timely process their Medicaid applications, Plaintiffs Loftus and Neal have failed to receive nursing facility services provided by Defendant, which they are entitled pursuant to federal law.

37.    Due to the Defendant's failure to comply with 42 C.F.R. § 447.45(d), Defendant has failed to provide for nursing facility services to Plaintiffs Grasseschi, Nelson, J., Brinkley, Cook, Frazier, Kaufman, Koehler, Marcoux, Mercier, Mondy, Vanwinkle, Biggins, Suckach, Anderson, Elliott, Gann, Hess, Icenogle, Ishmael, Katner, Lane, McGrew, Merry-Azimi, Morgan, Rose, Smith, Steffan, Toufexis, Winters, Wrone, Fathauer, Simpson, Turner, and Mullins' timely filed claims, these Plaintiffs have failed to receive the nursing facility services required by Plaintiffs and to which they are entitled pursuant to federal law.

38.    As a consequence of' the Defendant's actions as described herein, the Plaintiffs have suffered damages.

39.     By failing to provide nursing facility services to Plaintiffs, the Defendant has failed to comply with federal law, as preempted by the Supremacy Clause of the United States Constitution, Article VI. The burden placed on the Defendant, should the Court grant the relief requested in this action, is that Defendant will be required to comply with federal Medicaid laws and provide for medical services to Plaintiffs. The Defendant stand to suffer diminutive, if any, burden by providing for nursing facility services to Plaintiffs, which they are required to do by law.

## COUNT TWO - VIOLATION OF THE FEDERAL MEDICAID ACT'S MEDICAL ASSISTANCE, AND NURSING FACILITY SERVICES MANDATE

40.     The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

41.     In violation of the medical assistance and nursing facility services provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(A), the Defendant, while acting under the color of law, has failed to provide the Plaintiffs with nursing facility services necessary for the health and welfare of these disabled Plaintiffs.

42.     The Defendant's violations, which have been repeated and knowing, entitle the Plaintiffs to relief under 42 U.S.C. § 1983.

## COUNT THREE - VIOLATION OF THE FEDERAL MEDICAID ACT'S REASONABLE PROMPTNESS REQUIREMENT

43.     The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

44.     The named Plaintiffs are all Medicaid-eligible individuals who require nursing facility services and reside in Illinois.

45.     The Defendant is engaged in the repeated, ongoing failure to arrange and provide medical assistance and nursing facility services despite the fact that medical assistance and nursing facility services are medically necessary for all named Plaintiffs.

46.      In violation of 42 U.S.C. § 1396a(a)(8) of the Federal Medicaid Act, the Defendant, while acting under the color of law, failed to provide services to the Plaintiffs with "…reasonable promptness…". Furthermore, the Defendant is required to administer the Medicaid program in compliance with 42 C.F.R. §435.930 (requiring applicants be afforded Medicaid benefits without any delay).

47.      The Defendant's violations, which have been repeated and knowing, entitle the Plaintiffs to relief under 42 U.S.C. § 1983.

## COUNT FOUR – VIOLATION OF THE "AMERICANS WITH DISABILITIES ACT" ("ADA"), 42 U.S.C. §12132

48.      The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

49.      The Defendant Norwood has failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

50.      All of the Plaintiffs are "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq*. and 28 C.F.R. § 35.130 *et. seq*.

51.      The Defendant's failure to afford the Plaintiffs public benefits and services, to which they are entitled under federal law, and failure to grant the residents Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the ADA, 42 U.S.C. § 12132 *et seq*. and 28 C.F.R. § 35.130 *et seq*.

52.      As a consequence of' Defendant's actions as described herein, Plaintiffs have suffered damages, including compensatory, mental anguish and other damages.

## COUNT FIVE – VIOLATION OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794

53.     The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

54.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits public entities and recipients of federal funds from discriminating against any individual by reason of disability. Policies, practices, and procedures that have the effects of unjustifiably denying access to public services and benefits to persons with disabilities constitute prohibited discrimination under the Rehabilitation Act.

55.     The Illinois Department of Healthcare and Family Services is a recipient of federal funds under the Rehabilitation Act. The Plaintiffs are qualified individuals with a disability under Section 504 of the Rehabilitation Act.

56.     The actions by HFS constitute unlawful discrimination under 29 U.S.C. § 794(a), violate the mandate that no qualified handicapped person should be denied benefits on the basis of handicap, and violate the regulations implementing this statutory prohibition.  28 C.R.R. § 41.51(d).

57.     Plaintiffs are individuals who require 24-hour skilled nursing and supportive living services for their health, welfare, and survival.  The Defendant's failure to provide nursing facility services to Plaintiffs violates § 504 of the Rehabilitation act of 1973 and its implementing regulations.

58.     As a consequence of' Defendant's actions as described herein, Plaintiffs have suffered damages, including compensatory, mental anguish and other damages.

<u>**COUNT SIX – VIOLATION OF DUE PROCESS
AND EQUAL PROTECTION (42 U.S.C. § 1983)**</u>

59.     The Plaintiffs incorporate all paragraphs set out above as if fully set out herein

60.     Equal protection doctrine ensures that all similarly situated persons are treated similarly under the law. If a statute classifies people, the classification must be based on criteria

related to the statute's objective. *Disabled Am. Veterans v. United States Dep't of Veterans Affairs*, 962 F.2d 136, 141 (2d Cir. 1992). Plaintiffs were treated differently than persons who did not suffer from a disability and differently from persons in other geographic areas.

61.     Defendant deprived Plaintiffs of their property interest to which Plaintiffs had a legitimate claim of entitlement. The procedures implemented by Defendant to deprive Plaintiffs of their property interest are and were constitutionally insufficient.

62.     To comply with the Due Process guarantees under the United States Constitution, the Defendant must provide the Plaintiffs with a meaningful notice that apprises them of the reasons for a denial of assistance, the authority for the denial, and an opportunity to appeal such denial of assistance.

63.     Plaintiffs are entitled to a hearing when such benefits are denied to him for the reasons enumerated under the Federal Medicaid act.

64.     The above acts were committed under color of state law by the Defendant. Said acts were committed by the Defendant by and through representatives of the Defendant acting in their official capacities pursuant to the statutes, ordinances, laws and policies of the Defendant.

65.     The Defendant acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiffs of their rights, privileges, or immunities secured by the Constitution and laws by the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and by 42 U.S.C. §1983.

66.     As a consequence of' the Defendant's actions as described herein, the Plaintiffs have suffered damages including compensatory, mental anguish and other damages.

## COUNT SEVEN – TEMPORARY AND PERMANENT INJUNCTION

67.     The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

68.     The above acts were committed under color of state law by the Defendant. Said acts were committed by and through representatives of the Defendant acting in their official capacities pursuant to the statutes, ordinances, laws and policies of the Defendant.

69.     The Plaintiffs demand temporary and permanent injunctive relief requiring that the Defendant provide for nursing facility services for approved Medicaid benefits.

70.     Issue an Order requiring the Defendant to automatically provide for nursing facility services to Plaintiffs.

## VII. REQUESTS FOR RELIEF

1.     Certify this case to proceed as a class action under Fed. R. Civ. P. 23(b)(2);

2.     Issue a Declaratory Judgment in favor of the Plaintiffs and the Class, requiring Defendant to adhere to the requirements of the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

3.     Declare unlawful the Defendant's failure to arrange for medical assistance and nursing facility services to the Plaintiffs and Class;

4.     Issue Preliminary and Permanent Injunctive relief enjoining the Defendant from subjecting the Plaintiffs and the Class to practices that violate their rights under the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

5.     Issue Preliminary and Permanent Injunctive relief requiring the Defendant to arrange for medical assistance and nursing facility services to the Plaintiffs and Class;

6.     Award Plaintiffs and the Class the costs of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205; § 504 of the Rehabilitation Act, and 42 U.S.C. § 1988; and,

7.     Award such other relief as the Court deems just and appropriate, including, but not limited to, compensatory and punitive damages, interest, expenses and costs.

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY.**

Respectfully submitted,

/s/ Katie Z. Van Lake
ARDC# 6292120
SB2, Inc.
1426 N. 3rd Street, Suite 200
Harrisburg, PA 17102
Telephone: (516) 509-1289
Facsimile: (717) 909-5925
kvanlake@sb2inc.com
*Attorney for Plaintiffs*